[Civ. No. 6327. Third Appellate District.—March 26, 1940.]

A. M. BULEY, Respondent, v. FRANK L. MURDOFF et al., Appellants.

Holbrook, Taylor, Tarr & Reed for Appellants.

Robert F. Shippee for Respondent.

TUTTLE, J.—This action was brought to rescind a contract for the sale of real property, and to recover possession of certain notes and stock assigned by respondent to appellant. Rescission was denied by the trial court, but judgment was entered ordering the return of said notes and stock to plaintiff. Defendant appeals from the judgment.

Throughout this opinion we have designated but one appellant, Frank L. Murdoff. The other appellant is his wife, but her name appears as a mere formality.

In the month of May, 1929, defendant sold plaintiff a tract of land in Los Angeles County. The purchase price was $52,699, and title was taken subject to a mortgage for $7,500 in favor of one Barnard. As part of the purchase price, plaintiff executed a note and deed of trust in favor of defendant, in the sum of $45,199.

The complaint states an action for rescission, based upon alleged fraudulent representations made by defendant. It also alleges that, subsequent to said purchase, plaintiff was induced to deliver to defendant 125,000 shares of stock in Western Borax Company, Ltd., "by reason of the false and fraudulent statements and representations made by defendant Murdoff, as hereinbefore alleged". The allegations of fraud referred to are matters which took place prior to the sale, and not to any statements and representations made subsequent thereto in relation to the stock transaction. The trial court found that there was no fraud whatever in connection with the sale, and denied a rescission. Judgment, however, was rendered that the said shares of stock be redelivered by defendant to plaintiff, and the appeal is taken therefrom by defendant.

Within a short time after the sale, plaintiff became delinquent in his monthly payment of $1,000 upon the note mentioned. Finally, on July 28, 1931, the parties entered into an agreement, the purpose of which was to extend the time when defendant could sell the property under his deed of trust. Under its terms, 90,000 shares of the Borax Company were assigned and delivered to defendant, Frank L. Murdoff, who was the party of the first part. It provided that:

"All moneys received by first party from the sale or disposal of said stock or from second party, shall be applied to the payment of the balance due of the principal and interest on a note in the sum of $45,199.00 made out in favor of Frank L. Murdoff and his wife, secured by a deed of trust, and the further sum of the principal and interest due on a note secured by a first mortgage, both encumbrances being imposed upon the property hereinabove described, and the further sum of $200.00 for past expenses in connection with this transaction."

It was also provided that:

"In the event there is a default or breach of any provision of this agreement, 90,000 shares of the Western Borax Co., Ltd., stock hereby assigned, shall be retained by first party as liquidated damages and not as a forfeiture for the breach hereof, and this agreement shall terminate."

Nothing further was done with the stock, and it was in the possession of Murdoff at the time of the trial. It is quite evident that the stock was so delivered as further security for the payment of the indebtedness upon the property. Such indebtedness was never paid.

On July 31, 1931, the parties executed a second agreement. It recited that a promissory note for $1633.10, signed by plaintiff with Murdoff as payee, was due, and that plaintiff desired to have the time of payment extended for thirty days. It provided that 7,000 shares of stock in the Borax Company should be assigned and delivered to Murdoff, "to be reassigned upon his compliance with the terms of this agreement". It also contained the same "liquidation clause" as appears in the first agreement. The note was never paid, and the stock was in the possession of Murdoff at the time of trial.

Early in July, 1931, plaintiff executed and delivered to Murdoff his promissory note in the sum of $5,500 to cover arrears in payments due under the deed of trust mentioned.

At the same time plaintiff placed in escrow, as security for the payment of said note, 30,000 shares of the Borax Company. This note was never paid, and, together with the stock, is now in the possession of Murdoff.

Prior to the commencement of the action, the holder of the first lien upon the property (one Barnard) brought an action in foreclosure and acquired the title.

After finding there was no fraud whatever upon the part of defendant, and denying the right of plaintiff to rescind, the court concludes as law, that as to the 90,000 shares of stock, the provisions for a retention thereof by defendant was "in the nature of a penalty of forfeiture", and defendant is not entitled to retain possession thereof. The same conclusion is reached as to the 7,000 shares. As to the 30,000 shares, the court concludes that there was no consideration for the note for which said stock was delivered as security.

■ It must be conceded that the *first two blocks* of stock mentioned in the above paragraph were delivered to defendant under agreements to pledge the same as security for the performance thereof. "Pledge is a deposit of personal property by way of security for the performance of another act." (Civ. Code, sec. 2986.) It is admitted that plaintiff failed to perform or carry out said agreements. Defendant is entitled to retain possession of said stock and to sell the same according to the law pertaining to pledges (Civ. Code, sec. 3005), and apply the balance upon the indebtedness owing to him from plaintiff.

■ It is contended by respondent that appellant cannot justify his retention of possession of the stock upon the ground of a pledge because no such issue was presented by the pleadings. It was alleged in the complaint that plaintiff was entitled to possession, and this was denied in the answer. Under such pleadings, defendant was entitled to prove any facts which would give him legal possession. The fact that the transactions were intended as pledges is a defense which was available to defendant.

■ Respondent appears to concede, as he must, that the provision for liquidated damages, if it be void, is only void in respect to such liquidation clause. Section 1670 of the Civil Code is express upon that point: "Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined

in anticipation thereof, is to *that extent* void, except as expressly provided in the next section.'' As no attempt is here made by appellant to bring about a forfeiture in respect to the stock, we cannot see how the code section mentioned has anything to do with the case. The contract in all other respects remains in full force and effect.

The court found that:

''Defendants suffered no damage or detriment as the result of said defaults or breaches of said agreements, or by reason of plaintiff's failure to pay the promissory note for Fifty-five Hundred ($5500.00) Dollars, which were not adequately provided for in the terms of said deed of trust note.''

The foregoing finding does not have any substantial support in the evidence. All the transactions referred to in such finding involve the giving of *additional* security for the payment of the note secured by the trust deed. ▮ The fact that the trust deed obligated appellant to pay the amounts which were also mentioned in the agreements, whether principal or interest, does not render such agreements unenforceable for want of consideration. The extinction or loss of the additional security would be, under the evidence, a detriment and damage to appellant.

▮ As to the remaining block of stock, the 30,000 shares, the court found that the note for which this stock was delivered as collateral was without consideration. The record shows that when the note was executed plaintiff was in arrears in his payments on the trust deed. The note was given, and the stock assigned to defendant to secure payment of the amount in default. Section 1963, subdivision 21 of the Code of Civil Procedure provides that it is presumed ''that a promissory note or bill of exchange was given or endorsed for a sufficient consideration''. We find no substantial evidence to rebut this presumption. There is the further consideration appearing which consists of the forbearance to·sue on the orginal obligation upon the part of defendant. We might add that the testimony relating to all of these transactions is vague and indefinite, and in a very unsatisfactory state. Appellant has failed to point out any evidence from which it can be inferred that there was no consideration for the note. The finding should be eliminated.

In conclusion, it appears that plaintiff was greatly indebted to defendant at all times, and that the only security the latter

had for the original obligation was a deed of trust, which was subject to a prior mortgage to a third party. This condition was detrimental to the security of the trust deed. All of the transactions, including the execution of the note and the subsequent contracts and assignments of stock, were for the express purpose of further securing defendant, as the trust deed became more and more imperiled by plaintiff's failure to take care of the prior mortgage. Forbearance on the part of defendant to exercise his right of forclosure under the trust deed constituted the underlying consideration for the transactions discussed. Defendant is entitled to the possession of the shares of stock mentioned in the judgment—125,000—but the court should order such stock sold in the manner provided for the sale of pledged property in the Civil Code (sec. 3005). Each of the three transactions should be treated separately. Where they provide for a method of dividing the proceeds from the sale, such directions should be followed. In the absence of directions, the proceeds should be applied to the particular indebtedness involved, and the surplus, if any, should be paid to plaintiff. In the case of the 90,000 shares, the proceeds should be applied to the entire balance due on the original note secured by the trust deed. The proceeds from the sale of the 30,000 shares should be applied to the note of $5,500. In the case of the 7,000 shares (actually reduced in number to 5,000 by a sale of 2,000), the proceeds should be devoted to payment of the note for $1633.10.

The judgment is reversed, with directions to the trial court to enter findings and judgment in accordance with this opinion.

Thompson, J., and Pullen, P. J., concurred.